UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
(CHARLESTON DIVISION)
Case No.: 2:26-cv-00212-DCN

WESTFIELD CHAMPION
INSURANCE COMPANY,

Plaintiff,

vs.

INTERTEX, LLC

Defendant.

**AMENDED COMPLAINT**
**(Jury Trial Demanded)**

NOW COMES Plaintiff, Westfield Champion Insurance Company ("Westfield" or "Plaintiff"), by and through its undersigned counsel, demands judgment against Defendant, Intertex, LLC, and complains against it as follows:

## **PARTIES**

1. Westfield is a corporation organized and existing under the laws of the State of Ohio with its principal place of business located at One Park Circle, Westfield Center, OH 44251. At all times relevant hereto, Plaintiff was duly authorized to engage in the business of insurance in the State of South Carolina.

2. At all times relevant hereto, Westfield provided property insurance to SAA LLC d/b/a Best Western Magnolia Inn ("SAA") in connection with its property located at 747 Treeland Drive, Ladson, SC 29456 (the "subject property"), under a policy of insurance that was in full force and effect on all relevant dates, and at all relevant times.

3.     In the wake of the incident described below, as a result of a claim made on said policy (which was duly paid pursuant thereto), Westfield became subrogated to certain recovery rights and interests of SAA for monies paid thereunder, including the claims giving rise to this action.

4.     Defendant Intertex, LLC ("Defendant" or "Intertex") is a limited liability company organized and existing under the laws of the State of Delaware and the State of New York. The sole member of Intertex, LLC, is Lasko Operation Holdings, LLC ("Lasko Holdings"). The sole member of Lasko Holdings is SLF V NL Holdings, LLC. ("SLF Holdings"). The sole member of SLF Holdings is SLF V NL Parent LLC ("SLF Parent"). The sole member of SLF Parent, is HPS Funds, a company that is organized under the laws of Delaware with its principal place of business located in New York. Thus, for purposes of diversity under 28 U.S.C. § 1332(a), Intertex, LLC is a citizen of Delaware and New York. Lasko Holdings, SLF Holdings, and SLF Parent are also citizens of New York and Delaware for purposes of diversity under 28 U.S.C. § 1332(a). Intertex's principal place of business is located at 550 South Ayon Avenue, Azusa, CA 91702.

5.     At all times relevant hereto, Intertex was engaged in the business of, *inter alia*, designing, manufacturing, assembling, testing, inspecting, marketing, distributing, selling and/or placing into the stream of commerce, *inter alia*, fans and did, in fact, design, assemble, manufacture, test, distribute, market and/or sell the 2013 Monsoon brand fan (the "subject product") at issue in this case.

## JURISDICTION AND VENUE

6. Jurisdiction is based on 28 U.S.C. § 1332(a)(1) as this action involves a controversy between citizens of different states. Moreover, the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7. Venue is proper in this district based on 28 U.S.C. § 1391(b)(2) in that the events giving rise to this claim occurred within this district.

## STATEMENT OF FACTS

8. Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

9. Prior to August 14, 2024, Intertex designed, manufactured, assembled, tested, inspected, marketed, distributed, sold and/or placed into the stream of commerce the subject product which was intended for use by consumers for the ordinary purpose associated with fans.

10. Prior to August 14, 2024, SAA purchased the subject product.

11. On or about August 14, 2024, the subject product malfunctioned, catastrophically failed, and caused a fire.

12. This fire led to extensive damage to the subject property which was directly and proximately caused by the Defendant as is further and more fully described below.

13. As a direct result of the fire damage, SAA sustained extensive and severe damage to its real and personal property. Westfield became subrogated to the

3

rights, claims and interests of SAA for any monies paid thereunder, including the claims giving rise to this action.

14. The damages sustained by SAA and, therefore, Plaintiff, are the direct and proximate result of the negligent conduct of Defendant.

## FIRST COUNT – NEGLIGENCE

15. Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

16. SAA's damages were the direct result of the negligence, careless conduct, and/or acts or omissions of Intertex, by and through its employees, agents, technicians, vendors, subcontractors, and/or servants, more specifically described as follows:

    a. failing to design, manufacture, assemble, test, inspect, market, distribute, sell and/or place into the stream of commerce a properly functioning and defect-free product, which after reasonable and foreseeable use malfunctioned and catastrophically failed;

    b. designing, manufacturing, assembling, testing, inspecting, marketing, distributing, selling and/or placing into the stream of commerce the subject product when Intertex knew, or should have known, that it was unsafe and unfit for its intended use;

    c. designing, manufacturing, assembling, testing, inspecting, marketing, distributing, selling and/or placing into the stream of commerce the subject product when it knew, or should have known, that the product would be inadequate for the reasons for which it was purchased;

    d. designing, manufacturing, assembling, testing, inspecting, marketing, distributing, selling and/or placing into the stream of commerce the subject product that catastrophically failed and/or malfunctioned;

    e. designing, manufacturing, assembling, testing, inspecting, marketing, distributing, selling and/or placing into the stream of

commerce a dangerously defective product that Intertex knew, or reasonably should have known, exposed users to an unreasonable risk of harm;

f.  failing to properly and adequately design, manufacture, assemble, test and/or inspect the subject product prior to introducing it into the stream of commerce;

g.  failing to provide adequate and sufficient warnings and instructions with respect to the subject product, which rendered it defective and unreasonably dangerous; and

h.  designing, manufacturing, assembling, testing, inspecting, marketing, distributing, selling and/or placing into the stream of commerce the subject product in a defective condition which rendered it hazardous and dangerous for its contemplated and intended use.

17.  As a direct and proximate result of such conduct, SAA sustained and incurred damage to real and personal property in an amount to be proven at trial, in excess of $75,000.00. As set forth above, Plaintiff is subrogated to SAA's right of recovery.

## SECOND COUNT – BREACH OF WARRANTIES

18.  Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

19.  In conjunction with the design, manufacture and sale of the subject product, Intertex expressly and impliedly warranted that the subject product would be free from defects and safe to use for its intended purpose. SAA relied upon the warranties to its detriment.

20.  Intertex breached these warranties because the subject product was not free of defects, was not of merchantable quality, and was not fit for the purposes for which it was intended.

21.     SAA and Plaintiff have performed all conditions precedent to recover based upon such breaches.

22.     As a result of the damages directly and proximately caused by said breach(es) of Intertex, SAA sustained and incurred damage to real and personal property in an amount in excess of $75,000.00. As set forth above, Plaintiff is subrogated to SAA's right of recovery.

## THIRD COUNT – STRICT PRODUCT LIABLITY

23.     Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

24.     Intertex was engaged, in the business of *inter alia*, designing, manufacturing, assembling, testing, inspecting, marketing, distributing, selling and/or placing into the stream of commerce, fans and Intertex furthermore specifically designed, manufactured, assembled, tested, inspected, marketed, distributed, sold and/or placed into the stream of commerce the subject product at issue in this case.

25.     The subject product was not modified, changed, altered, misused, or abused after Intertex placed it into the stream of commerce.

26.     Intertex knew, and intended, that the subject product would be used by members of the general public, and furthermore knew of the specific uses, purposes and requirements for which said product would be utilized.

27.     Intertex designed, manufactured, assembled, tested, inspected, marketed, distributed, sold and/or placed into the stream of commerce the subject

6

product in a dangerous and defective condition, which ultimately led to a catastrophic failure and/or malfunction.

28. Intertex designed, manufactured, assembled, tested, inspected, marketed, distributed, sold and/or placed into the stream of commerce the subject product in a defective condition, unreasonably dangerous to Plaintiff's insured, as well as other consumers.

29. Intertex knew, or should have known, that the subject product would, and did, reach Plaintiff's insured without substantial change in the condition in which it was originally selected and sold.

30. The subject product was not altered in any manner that caused or contributed to the fire after it originally left the possession of Intertex.

31. The subject product was operated in a foreseeable, normal, ordinary and intended manner at all relevant times.

32. The fire loss, and resulting damage, were caused by the acts and/or omissions of Intertex, by and through its agents, servants, employees and/or representatives, acting within the course and scope of their employment and/or authority, for which Intertex is liable for the following reasons:

    a.    failing to design, manufacture, assemble, test, inspect, market, distribute, sell and place into the stream of commerce a properly functioning and defect-free product, which after reasonable and foreseeable use malfunctioned and/or catastrophically failed;

    b.    failing to properly determine that the subject product was not in a safe condition and free of all material defects;

    c.    designing, manufacturing, assembling, testing, inspecting, marketing, distributing, selling and/or placing into the stream of

commerce the subject product when it knew, or should have known, that the subject product was unsafe and unfit for its intended use;

d.    designing, manufacturing, assembling, testing, inspecting, marketing, distributing, selling and/or placing into the stream of commerce the subject product when Intertex knew, or should have known, that the subject product would be inadequate for the reasons for which it was purchased;

e.    designing, manufacturing, assembling, testing, inspecting, marketing, distributing, selling and/or placing into the stream of commerce the subject product that Intertex knew, or reasonably should have known, exposed users to an unreasonable risk of harm;

f.    failing to provide adequate and sufficient warnings and instructions with respect to the subject product, which rendered it defective and unreasonably dangerous;

g.    designing, manufacturing, assembling, testing, inspecting, marketing, distributing, selling and/or placing into the stream of commerce the subject product in a defective condition which rendered the subject product hazardous and dangerous for its contemplated and intended use;

h.    designing, manufacturing and distributing a dangerously defective product that Intertex knew, or reasonably should have known, exposed users to an unreasonable risk of fire;

i.    the subject product was dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community of its characteristics;

j.    the probability of injury times the gravity of injury under the current design of the subject product is more than the cost of an alternative reasonable design plus the diminished utility resulting from modifying the design;

k.    common experience teaches that the fire damage would not have occurred in the subject product in the absence of a defect; and

l.    the foreseeable risks associated with the design of the subject product exceed all benefits.

33. The aforementioned defects, or defective conditions, existed at the time Intertex placed the subject product into the stream of commerce.

34. The defective, unreasonably dangerous and unsafe condition of the subject product was a direct cause of the damages sustained by Plaintiff.

35. For these reasons, Intertex is strictly liable to Plaintiff under Section 402A of the Restatement (2d) of Torts, the Restatement (3d) of Torts, and the applicable case law of the State of South Carolina.

36. As a direct and proximate result of the aforementioned defects, SAA sustained and incurred damage to real and personal property in an amount in excess of $75,000.00. As set forth above, Plaintiff is subrogated to SAA's right of recovery.

**WHEREFORE**, Plaintiff prays the Court as follows:

1. That it have and recover judgment against Defendant in an amount to be proven at trial, in excess of $75,000.00, plus interest;

2. That it have and recover from Defendant the costs of this matter, to include Plaintiff's attorney's fees to the extent allowed by law;

3. Plaintiff demands a trial by jury on all issues so triable; and

4. For such other and further relief as may be just and proper.

*[Signature page to follow]*

9

This the 26th day of March, 2026.

ROSENWOOD, ROSE & LITWAK, PLLC

/s/ Whitaker B. Rose
Whitaker B. Rose
District Court ID No. 12240
1712 Euclid Avenue
Charlotte, NC 28203
Telephone: (704) 228-8574
Facsimile: (704) 371-6400
Email:  wrose@rosenwoodrose.com

Matthew Connolly
(pro hac vice application forthcoming)
de Luca Levine
301 E. Germantown Pike, Suite 300
East Norriton, PA 19401
Telephone: (215) 383-0081
Fax: (215) 383-0082
E-mail: mconnolly@delucalevine.com
Attorneys for Plaintiff,
Westfield Champion Insurance Company